IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and | § | |
| THE STATE OF TEXAS ex rel | § | |
| PATRICIA M. CARROLL, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-3505 |
| | § | |
| PLANNED PARENTHOOD GULF | § | |
| COAST, INC. f/k/a PLANNED | § | |
| PARENTHOOD OF HOUSTON AND | § | |
| SOUTHEAST TEXAS, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff-Relator Patricia M. Carroll brings this qui tam action against Defendant Planned Parenthood Gulf Coast, Inc. ("Planned Parenthood") under the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq., and the Texas Medicaid Fraud Prevention Act ("TMFPA"), Texas Human Resources Code § 36.001 et seq. Pending before the court is Defendant's Motion to Dismiss Relator's Original Complaint and Memorandum of Law in Support ("Motion to Dismiss") (Docket Entry No. 25). For the reasons explained below, Planned Parenthood's Motion to Dismiss will be granted in part and denied in part, and Carroll will be ordered to file an amended complaint within fifteen (15) days.

# I.  **Background**

Carroll filed this <u>qui tam</u> action on behalf of the United States under the FCA and on behalf of the State of Texas under the TMFPA.[1]  The United States has declined to intervene under 31 U.S.C. § 3730(b)(4),[2] and the State of Texas has declined to intervene under Texas Human Resources Code § 36.104,[3] leaving Carroll as the sole plaintiff in this action.

Carroll alleges the following relevant facts in her Original Complaint.  Carroll was the Accounts Receivable Manager at Planned

---

[1] Original Complaint, Docket Entry No. 1.  Page citations to exhibits are to the pagination imprinted by the federal court's electronic filing system at the top and right of the document.  Page citations to the briefs are to the native page numbers at the bottom of the page in the documents.

[2] The Government's Election to Decline Intervention, Docket Entry No. 12; Order, Docket Entry No. 13.

[3] Carroll filed her Original Complaint under seal on December 3, 2012 (Docket Entry No. 1).  In prior orders the court extended the seal to December 3, 2013.  Order Extending the Seal Period, Docket Entry No. 8; Order, Docket Entry No. 11; <u>see</u> Tex. Hum. Res. Code. Ann. § 36.102(c), (d) (West) (providing that "[t]he state may elect to intervene and proceed with the action not later than the 180th day after the date the attorney general receives the petition and the material evidence and information" but that "[t]he state may, for good cause shown, move the court to extend the 180-day deadline").  The State of Texas has not filed any document indicating an intent to intervene in this case.  <u>Cf.</u> <u>United States ex rel. Fitzgerald v. Novation, L.L.C.</u>, No. 3:03-CV-1589-N, 2008 WL 9334966, at *7 (N.D. Tex. Sept. 17, 2008) (noting that "[u]nder Texas law, the state had two choices:  to intervene in the action or to decline to intervene" and that "neither Section 36.102 nor Section 36.104 provide[] the state the option of waiting indefinitely before deciding whether to intervene").  <u>But see</u> The Government's Election to Decline Intervention, Docket Entry No. 12, p. 2 n.1 ("The State of Texas anticipates filing its notice of declination within the next week.").  The court therefore concludes that the State of Texas has declined to intervene.

Parenthood from October of 2007 until she resigned in 2012.[4]   On March 4, 2012, Carroll noticed "a large revenue increase" of 314.76% for a Planned Parenthood clinic in Huntsville, Texas ("Huntsville Health Center"), "while preparing the monthly Projection Report."[5]   Upon investigating the matter Carroll discovered the conduct that she alleges violated the FCA and TMFPA.[6]

Carroll's allegations concern blood tests performed on youths "confined to Gulf Coast Trade[s] Center"[7] ("Trades Center"), "a private charter school, contracted to the Texas Youth Commission, to provide vocation services to youth involuntarily remanded to Trade Center for care and custody while under court order."[8]   The youths remanded to the Trades Center were eligible for Medicaid benefits[9] and the Trades Center provided the youths' Medicaid numbers to Planned Parenthood.[10]

Beginning in 2002 the Trades Center contacted Julio Asendio, a Planned Parenthood HIV Program staff member, when new Medicaid

---

[4]Original Complaint, Docket Entry No. 1, p. 2 ¶ 5; Motion to Dismiss, Docket Entry No. 25, p. 3.

[5]Original Complaint, Docket Entry No. 1, p. 12 ¶ 26.

[6]Id.

[7]Id. at 1 ¶ 2.

[8]Id. at 4 ¶ 11.

[9]Id. at 5-6, ¶¶ 20.A-B.

[10]Id. at 6 ¶ 20.C.

numbers were available.[11]  Asendio would go to the Trades Center and take blood and urine samples from the identified youths and return the samples to the Huntsville Health Center.[12]  Asendio and Brandi Taylor, Director of the Huntsville Health Center, would then create schedules giving the appearance that the services were rendered on-site at the Huntsville Health Center.[13]  Using the provider number of a Dr. Paul Fine, Planned Parenthood's federal tax identification number, and the National Provider Identifier or Texas Provider Identifier of various Planned Parenthood health centers, Asendio billed these services to Medicaid as an "office visit" for STD tests.[14]

About ten days after the initial visit Asendio would return to the Trades Center and take another blood sample from the same youths.[15]  He would then return to the Huntsville Health Center[16] and create another clinic schedule giving the appearance that the

---

[11]Id. ¶ 20.D.

[12]Id. ¶ 20.E.

[13]Id. at 7 ¶ 20.F; see also id. at 10-11 ¶ 23.

[14]Id. at 7 ¶ 20.F.

[15]Id. at 8 ¶ 20.G.

[16]Throughout her Original Complaint Carroll references both the Huntsville Health Center and a "Huntsville HIV Clinic Health Center" or "Huntsville Clinic." See id. at 6-7 ¶¶ 20.E-F, 10-11 ¶ 23, 12 ¶ 26.  For purposes of the pending Motion to Dismiss, the court will assume that these references are to the same Planned Parenthood clinic location in Huntsville, Texas.

-4-

services were rendered on-site at the Huntsville Health Center.[17]
The second blood-draw would then be billed to Medicaid as an
"office visit" for an HIV test.[18]

## II.  **Standards of Review**

Planned Parenthood moves the court to dismiss Carroll's claims
pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure
to state a claim for which relief may be granted and 9(b) for
failure to plead fraud with particularity.  "A dismissal for
failure to plead fraud with particularity under Rule 9(b) is
treated as a dismissal for failure to state a claim under
Rule 12(b)(6)."  United States ex rel. Thompson v. Columbia/HCA
Healthcare Corp., 125 F.3d 899, 901 (5th Cir. 1997).

## A.  **Federal Rule of Civil Procedure 12(b)(6)**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to
state a claim for which relief may be granted tests the formal
sufficiency of the pleadings and is "appropriate when a defendant
attacks the complaint because it fails to state a legally
cognizable claim."  Ramming v. United States, 281 F.3d 158, 161
(5th Cir. 2001).  The court must accept the factual allegations of
the complaint as true, view them in a light most favorable to the
plaintiff, and draw all reasonable inferences in the plaintiff's
favor.  Id.

---

[17]Id. at 8 ¶ 20.H.

[18]Id.

-5-

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."

Swierkiewicz v. Sorema N.A., 122 S. Ct. 992, 997 (2002) (quoting Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974)).  To avoid dismissal a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  Plausibility requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  "'[D]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief.'"  Torch Liquidating Trust ex rel. Bridge Associates L.L.C. v. Stockstill, 561 F.3d 377, 384 (5th Cir. 2009) (quoting Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995)).  When considering a motion to dismiss courts generally are limited to the complaint and its proper attachments.  Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008).  However, courts may rely upon "'documents incorporated into the complaint by

reference, and matters of which a court may take judicial notice.'" Id. (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2509 (2007)).

## B.    Federal Rule of Civil Procedure 9(b)

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "[A] complaint filed under the False Claims Act must meet the heightened pleading standard of Rule 9(b)."  United States ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 185 (5th Cir. 2009).  Pleading fraud with particularity in this circuit requires "[a]t a minimum . . . the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  Benchmark Electronics, Inc. v. J.M. Huber Corp., 343 F.3d 719, 724 (5th Cir. 2003).  The Fifth Circuit has explained that

> [i]n cases of fraud, Rule 9(b) has long played [a] screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later.  We apply Rule 9(b) to fraud complaints with "bite" and "without apology," but also aware that Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading.  Rule 9(b) does not "reflect a subscription to fact pleading" and requires only "simple, concise, and direct" allegations of the "circumstances constituting fraud," which after Twombly must make relief plausible, not merely conceivable, when taken as true.

Grubbs, 565 F.3d at 185–86 (footnotes omitted) (citing Twombly, 127 S. Ct. at 1955).  "Malice, intent, knowledge, and other conditions

of a person's mind may be alleged generally."   Fed. R. Civ.
P. 9(b).

### III.   Analysis

Carroll's Original Complaint alleges claims under 32 U.S.C.
§ 3729(a)(1)(A), (B), and (G),[19] in addition to claims under
analogous provisions of the TMFPA.   Planned Parenthood argues that
Carroll's claims should be dismissed because (1) the Texas Medicaid
Provider Procedures Manual ("Texas Provider Manual") permits the
conduct of which Carroll complains, (2) Carroll has failed to plead
fraud with the particularity required by Rule 9(b), and
(3) Carroll's claims are barred in part by the applicable statutes
of limitations.

### A.   Applicable Law

The FCA prohibits four distinct practices alleged in Carroll's
Original Complaint:   (1) the knowing presentment of a false claim
to the Government,[20] (2) the knowing use of a false record or

---

[19]In 2009 Congress passed the Fraud Enforcement and Recovery
Act ("FERA"), Pub. L. No. 111-21, 123 Stat. 1617 (2009), which
amended and renumbered certain provisions of § 3729.   As noted by
Planned Parenthood, although Carroll only cites the current version
of the statute, some of her claims are subject to the pre-FERA
version.   Motion to Dismiss, Docket Entry No. 25, pp. 4-5 nn.1-3.

[20]See 31 U.S.C. § 3729(a)(1)(A) (2009), which makes liable
whoever "knowingly presents, or causes to be presented, a false or
fraudulent claim for payment or approval."   As noted by Planned
Parenthood, a portion of Carroll's presentment claims are subject
to the pre-FERA version of § 3729(a)(1)(A), then codified at
§ 3729(a)(1) (2006).   Motion to Dismiss, Docket Entry No. 25,
(continued...)

statement to get a false claim paid,[21] (3) the knowing concealment

---

[20](...continued)
pp. 4-5 nn.2-3; see <u>United States ex rel. Spicer v. Westbrook</u>, No. 12-10858, 2014 WL 1778030, at n.5 (5th Cir. May 5, 2014) (describing the FERA amendments to the FCA's presentment provision). The amendments to this provision "apply to conduct on or after the date of enactment," which was May 20, 2009. FERA § 4(f), 123 Stat. at 1625. Courts in the Fifth Circuit have interpreted "conduct" in this context to refer to the defendant's underlying conduct giving rise to the plaintiff-relator's cause of action. <u>See, e.g.</u>, <u>Spicer</u>, 2014 WL 1778030, at n.5 ("The amendment to § 3729(a)(1) was effective May 20, 2009. Spicer appears to allege that the conduct relevant to Count One occurred prior to that date."); <u>United States ex rel. Dekort v. Integrated Coast Guard Sys.</u>, 705 F. Supp. 2d 519, 532 (N.D. Tex. 2010) ("As the conduct alleged in the Fifth Amended Complaint occurred well prior to May 20, 2009, with the exception of the amendments to § 3729(a)(2), none of the amendments apply to this case."); <u>United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.</u>, 748 F. Supp. 2d 95, 107 (W.D. Tex. 2010) ("In this case, Relator filed the complaint in September, 2006, and the action is focused on conduct of defendants from well before the enactment of FERA."), <u>aff'd</u>, 689 F.3d 470 (5th Cir. 2012). Accordingly, the pre-FERA version applies to Planned Parenthood's conduct before May 20, 2009. For purposes of the pending Motion to Dismiss, however, it is irrelevant whether Carroll's presentment claims are analyzed under the pre- or post-FERA version of the statute. <u>Cf.</u> <u>United States ex rel. Bennett v. Medtronic, Inc.</u>, 747 F. Supp. 2d 745, 764 n.17 (S.D. Tex. 2010) ("[I]n this litigation, there is no material difference between pre- and post-FERA versions of § 3729(a)(1) [because Defendant] does not contest that the reimbursement claims were presented to the government.").

[21]See 31 U.S.C. § 3729(a)(1)(B) (2009), which makes liable whoever "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." Planned Parenthood argues that the pre-FERA version of the statute (then codified at § 3729(a)(2)) applies to a portion of Carroll's false-record claims. Motion to Dismiss, Docket Entry No. 25, pp. 4-5 nn.1-3; see <u>Bennett</u>, 747 F. Supp. 2d at 764 n.17 (describing the FERA amendments to the FCA's false-record provision). "The FERA amendments to this provision apply to all claims pending on or after June 7, 2008." <u>Spicer</u>, 2014 WL 1778030, at n.6 (citing FERA § 4(f), 123 Stat. at 1625). The Fifth Circuit has consistently interpreted the term "claims" in this context to refer to cases pending before the court on or after June 7, 2008.
(continued...)

or knowing and improper avoidance or decrease of an obligation to
pay the Government,[22] and (4) the knowing use of a false record or

---

[21](...continued)
See id. ("This suit was originally filed on August 13, 2010.
Accordingly, the amended version of this provision,
§ 3729(a)(1)(B), applies."); United States ex rel. Patton v. Shaw
Servs., L.L.C., 418 F. App'x 366, 369 (5th Cir. 2011) ("Because
Patton filed suit on September 8, 2008, his complaint was 'pending'
after the effective date of new provision § 3729(a)(1)(B).");
United States ex rel. Steury v. Cardinal Health, Inc., 625 F.3d
262, 267 (5th Cir. 2010) ("Steury's complaint was pending on
June 7, 2008. We therefore assess Steury's claim under the current
§ 3729(a)(1)(B)."); see also United States ex rel. Davis v.
Lockheed Martin Corp., No. 4:09-CV-645-Y, 2010 WL 4607411, at *5-6
(N.D. Tex. Nov. 15, 2010) (holding that under the Fifth Circuit's
opinion in Steury, "the FERA amendment applies to the entirety of
the case raising claims under the false-records provision even if
the payment request was made before June 7, 2008"). But see
Bennett, 747 F. Supp. 2d at 762-64 (interpreting "claims" as a
defined term under the FCA meaning "claims 'for money or property'
from the government" and citing cases reaching the same
conclusion); Gonzalez, 748 F. Supp. 2d at 107-08 (interpreting
"claim" as a defined term and noting that "Congress [chose] to use
the word 'case,' rather than 'claim' in § 4(f)(2)[,] indicating
that Congress was aware of the distinction and would have used the
word "case" in (f)(1) had it intended the amendments to (a)(2) to
apply retroactively to pending FCA civil actions rather than
pending claims for money or property"). For purposes of the
pending Motion to Dismiss, however, it is irrelevant whether
Carroll's false-record claims are analyzed under the pre- or post-
FERA version of the statute. Cf. Bennett, 747 F. Supp. 2d at 764
n.17 ("[T]he differences between the pre- and post-FERA versions of
§ 3729(a)(2) do not affect this litigation [because Defendant] does
not dispute that the government paid or approved the reimbursement
claims [and] the Fifth Circuit required 'material' false statements
before the FERA amendments" (citing United States ex rel. Longhi v.
Lithium Power Techs., Inc., 575 F.3d 458, 470 (5th Cir. 2009))).

[22]See 31 U.S.C. § 3729(a)(1)(G) (2009), which makes liable
whoever "knowingly conceals or knowingly and improperly avoids or
decreases an obligation to pay or transmit money or property to the
Government." This language was added by the 2009 FERA amendments,
providing the revised § 3729(a)(1)(G) with both a fraudulent-
concealment and a false-record provision applicable to reverse
false claims.

-10-

statement material to an obligation to pay the Government.[23]   The
TMFPA contains analogous provisions prohibiting substantially the
same conduct in the context of the State's Medicaid program.[24]

"In determining whether liability attaches under the FCA, this
court asks '(1) whether there was a false statement or fraudulent
course of conduct; (2) made or carried out with the requisite
scienter; (3) that was material; and (4) that caused the government
to pay out money or to forfeit moneys due (i.e., that involved a

---

[23]See 31 U.S.C. § 3729(a)(1)(G) (2009), which makes liable
whoever "knowingly makes, uses, or causes to be made or used, a
false record or statement material to an obligation to pay or
transmit money or property to the Government."   Planned Parenthood
alleges that the pre-FERA version of the statute (then codified at
§ 3729(a)(7)) applies to a portion of Carroll's reverse false claim
allegations.   Motion to Dismiss, Docket Entry No. 25, pp. 4-5
nn.2-3.   However, Carroll's claim under § 3729(a)(1)(G) appears to
be based predominantly on her allegations concerning a May 4, 2012,
letter that Planned Parenthood submitted to the State of Texas and
Medicaid managed care organizations ("MCOs").   Original Complaint,
Docket Entry No. 1, p. 16 ¶ 35.   This conduct occurred after the
enactment of FERA.   Moreover, Planned Parenthood has not explained
how application of the pre-FERA version would affect the court's
analysis of the pending Motion to Dismiss.   Accordingly, the court
will apply the post-FERA version of the statute in addressing
Carroll's claim under § 3729(a)(1)(G).

[24]The parties focus primarily on the FCA in their briefing and
have not argued that a different standard applies to claims brought
under the TMFPA.   The court will therefore address the FCA and
TMFPA claims together using the standard applicable to FCA claims.
Cf. Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 6031, 120
Stat. 4, 72-73 (2005) (permitting states with false-claims laws
that meet certain requirements generally comparable to the FCA to
retain ten percent more of any amount recovered under those laws);
Bill Analysis, Tex. S.B. 362, 80th Leg., R.S. (2007), available at
http://www.capitol.state.tx.us/tlodocs/80R/analysis/pdf/SB00362I.
pdf (declaring the purpose of the 2007 TMFPA amendments to be
compliance with the requirements of the Deficit Reduction Act, thus
allowing the state to qualify for the additional ten percent
recovery).

claim).'" <u>Gonzalez v. Fresenius Med. Care N. Am.</u>, 689 F.3d 470, 475 (5th Cir. 2012) (quoting <u>Longhi</u>, 575 F.3d at 467).  "The FCA applies to anyone who 'knowingly assist[s] in causing' the government to pay claims grounded in fraud, 'without regard to whether that person ha[s] direct contractual relations with the government.'" <u>United States ex rel. Riley v. St. Luke's Episcopal Hospital</u>, 355 F.3d 370, 378 (5th Cir. 2004).  For FCA purposes

(1)   the terms "knowing" and "knowingly"--

    (A)   mean that a person, with respect to information-

        (i)    has actual knowledge of the information;

        (ii)   acts in deliberate ignorance of the truth or falsity of the information; or

        (iii)  acts in reckless disregard of the truth or falsity of the information; and

    (B)   require no proof of specific intent to defraud.

31 U.S.C. § 3729(b)(1).[25]  The requisite intent is thus the knowing presentation of what is known to be false; "which means that a lie is actionable but not an error." <u>Riley</u>, 355 F.3d at 376.  In <u>United States v. Southland Management Corp.</u>, 326 F.3d 669, 682 (5th Cir. 2003) (en banc) (Judge Jones concurring), the Fifth Circuit explained that

> "[t]he FCA is not an appropriate vehicle for policing technical compliance with administrative regulations. The FCA is a fraud prevention statute; violations of [agency] regulations are not fraud unless the violator knowingly lies to the government about them." <u>United States ex rel. Lamers v. City of Green Bay</u>, 168

---

[25]The 2009 FERA amendments reordered this section but did not effect any substantive change. <u>See</u> 31 U.S.C. § 3729(b) (2006).

F.3d 1013, 1019 (7th Cir. 1999).  Innocently made faulty calculations or flawed reasoning cannot give rise to liability.  <u>United States ex rel. Wang v. FMC Corp.</u>, 975 F.2d 1412, 1420-21 (9th Cir. 1992).  Further, where disputed legal issues arise from vague provisions or regulations, a contractor's decision to take advantage of a position can not result in his filing a "knowingly" false claim.  <u>See</u> <u>United States ex rel. Siewick v. Jamieson Science & Engineering, Inc.</u>, 214 F.3d 1372, 1378 (D.C. Cir. 2000); <u>Hagood v. Sonoma County Water Agency</u>, 81 F.3d 1465, 1478-79 (9th Cir. 1996).

The statute's definition of "knowingly" excludes liability for innocent mistakes or negligence.  <u>Id.</u> at 681.

**B.   Application of Law to the Facts**

    1.   <u>Carroll's Original Complaint contains enough facts to allege that Planned Parenthood knowingly filed false claims.</u>

Planned Parenthood argues that Carroll has failed to state a claim in her Original Complaint because the Texas Provider Manual permits the conduct of which she complains.[26]  Planned Parenthood alleges that "[b]ecause the youth located at the Trades Center were eligible Medicaid recipients, there is nothing that prohibits [Planned Parenthood] from billing Medicaid for preventative testing services that were actually provided."[27]

However, Carroll alleges that although the services were provided, Planned Parenthood was not eligible to bill Medicaid for those services.[28]  She alleges that Medicaid will not reimburse

---

[26]Motion to Dismiss, Docket Entry No. 25, pp. 6-12.

[27]<u>Id.</u> at 7.

[28]Original Complaint, Docket Entry No. 1, p. 7 ¶ 20.F, pp. 8-9 ¶¶ 21.A-D; <u>see also</u> Plaintiff's Response to Defendant's Motion to Dismiss ("Response"), Docket Entry No. 30, pp. 3-10.

Planned Parenthood for services rendered off-site by a non-physician[29] and that in order to obtain reimbursement for blood draws at the Trades Center, Planned Parenthood staff created schedules giving the appearance that the youths had visited the Huntsville Health Center and billed Medicaid using a place of service ("POS") code indicating that the services were rendered at Planned Parenthood's "office."[30]

> Carroll's Original Complaint specifically alleges that
>
> Planned Parenthood MSM/HIV staff knew that Trade Center was an ineligible site for their provider type, which is the reason the Place of Service code was falsified to reflect Place of Service code 11-office, when claims were created for billing. Planned Parenthood cannot bill school (POS 03) or prison services (POS 09) to Medicaid for reimbursement. Claims billed by Planned Parenthood with Place of Service codes 03 or 09 would be denied by TMHP and no benefits paid. Planned Parenthood purposely changed the Place of Service to fraudulently secure Title XIX funds on claims that were ineligible.[31]

Carroll further alleges that only physicians are eligible to use the billing codes that Planned Parenthood used to obtain reimbursement for the blood draws and that the staff member who performed the blood draws was neither a physician nor supervised by a physician.[32] Thus, Planned Parenthood's contention that the services were provided does not defeat Carroll's allegation that Planned Parenthood was not entitled to reimbursement for those

---

[29]Original Complaint, Docket Entry No. 1, p. 7 ¶ 20.F, p. 8 ¶ 20.H.

[30]_Id._ at 6-8 ¶¶ 20.C-H.

[31]_Id._ at 7 ¶ 20.F; _see also id._ at 8-9 ¶¶ 21.A-C.

[32]_Id._ at 8 ¶ 20.H, 9 ¶ 21.D.

services and that it falsified its records in order to obtain reimbursement for which it was not eligible.

Planned Parenthood also argues that the Texas Provider Manual "provides little guidance as to which POS code to use or which, among several options, would be applicable to the services provided here."[33]  Planned Parenthood points to the Centers for Medicare and Medicaid Services' ("CMS") definition of the term "office"[34] to argue that "it would be a reasonable interpretation that the Trade Center is a 'location . . . where [Planned Parenthood] routinely provides health [services]' and, therefore, services provided at Trade Center were properly described with a POS code 11."[35]

However, Carroll alleges that Planned Parenthood knew that the "office" billing code was the incorrect code for services performed at the Trades Center and used it anyway in order to obtain payments for which it was ineligible.[36]  She alleges that "Planned Parenthood add[ed] the names of the Trade Center youths to its clinic

---

[33]Motion to Dismiss, Docket Entry No. 25, p. 8.

[34]"Office" is defined to mean a "[l]ocation, other than a hospital, skilled nursing facility (SNF), military treatment facility, community health center, State or local public health clinic, or intermediate care facility (ICF), where the health professional routinely provides health examinations, diagnosis, and treatment of illness or injury on an ambulatory basis."  CMS Place of Service Code Set ("CMS POS Codes"), Exhibit A-3 to Motion to Dismiss, Docket Entry No. 25-1, p. 51; Place of Service Codes for Professional Claims ("CPT POS Codes"), attached to Response, Docket Entry No. 30-2, p. 1.

[35]Motion to Dismiss, Docket Entry No. 25, p. 9 (quoting CMS POS Codes, Exhibit A-3 to Motion to Dismiss, Docket Entry No. 25-1, p. 51).

[36]Original Complaint, Docket Entry No. 1, pp. 6-11 ¶¶ 20.F-23.

schedule, as if they actually visited the clinic [and t]heir home addresses are all shown on the schedule as being the Trade Center."[37] The lists of POS codes produced by both parties include a code for services rendered at a patient's home.[38]   Planned Parenthood has not explained the inconsistency in listing the Trades Center as the patient's home in its clinic schedules and also billing Medicaid for services provided at the Trades Center as if they had been performed at Planned Parenthood's "office." Moreover, a determination of whether Planned Parenthood reasonably interpreted the term "office" to apply to services rendered at the Trades Center, in light of Carroll's allegations to the contrary, depends on credibility determinations that are improper in the context of a 12(b)(6) motion to dismiss.

---

[37]Id. at 7 ¶ 20.E; see also id. at 4 ¶ 11.

[38]CMS POS Codes, Exhibit A-3 to Motion to Dismiss, Docket Entry No. 25-1, p. 51; CPT POS Codes, attached to Response, Docket Entry No. 30-2, p. 1.  "Home" is defined to mean a "[l]ocation, other than a hospital or other facility, where the patient receives care in a private residence."  Id.  Arguing that the Trades Center is not a "prison," Planned Parenthood asserts that "[t]he Texas Workforce Commission confirms that it licenses the Trade Center as a private charter school."  Motion to Dismiss, Docket Entry No. 25, p. 11 n.8.   There is a POS code for services rendered at a "school," which is defined to mean "[a] facility whose primary purpose is education."  CMS POS Codes, Exhibit A-3 to Motion to Dismiss, Docket Entry No. 25-1, p. 51; CPT POS Codes, attached to Response, Docket Entry No. 30-2, p. 1.  Thus, Planned Parenthood appears to contend that the Trades Center is a "school" by definition but an "office" for purposes of billing Medicaid, although it considered the Trades Center a "home" for purposes of creating the schedules to support its Medicaid billing.  As noted above, whether this interpretation is reasonable involves credibility determinations that are improper in the context of a 12(b)(6) motion to dismiss.

-16-

Planned Parenthood also argues that even if it did use incorrect billing codes, such conduct could not have been material to the government's decision whether to reimburse the claims because use of the correct billing codes would have resulted in "reimburse[ment] <u>at the same rate</u> by Medicaid."[39]  <u>See</u> 31 U.S.C. § 3729(b)(4) ("[T]he term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."); <u>Longhi</u>, 575 F.3d at 468-70 ("All that is required under the test for materiality . . . is that the false or fraudulent statements have the potential to influence the government's decisions."); <u>see also</u> <u>Bennett</u>, 747 F. Supp. 2d at 764 n.17.  However, Carroll alleges that Planned Parenthood is only eligible for reimbursement if it uses the code corresponding to an "office visit."[40]  Carroll alleges that even if the reimbursement rate is generally the same for services provided at an "office" or a "school" by other providers, it would not be the same for Planned Parenthood in this case.[41]  The court concludes that Carroll has adequately pleaded factual content that allows the court to draw the reasonable inference that Planned Parenthood knowingly filed false claims.

---

[39]Motion to Dismiss, Docket Entry No. 25, pp. 18-19; <u>see also</u> <u>id.</u> at 10.

[40]Original Complaint, Docket Entry No. 1, p. 7 ¶ 20.F; <u>see also</u> Response, Docket Entry No. 30, pp. 3-8.

[41]<u>Id.</u>  Indeed, Carroll alleges that she attempted to bill the services using the code for "school," and the claim was denied. Response, Docket Entry No. 30, pp. 3-4.

Carroll also alleges that at least some of the services provided at the Trades Center were not medically necessary. She alleges (1) that the youths were already tested before they entered the Trades Center[42] and (2) that the HIV test could have been performed on the initial blood draw without a second visit to the Trades Center, a second blood draw, and a second reimbursement from Medicaid.[43] Planned Parenthood contends, however, that "'[r]outine HIV testing is covered as a preventative or screening benefit'" for which "'[m]edical necessity is not required.'"[44]   In support, Planned Parenthood points to the Centers for Disease Control and Prevention's Revised Recommendations for HIV Testing of Adults, Adolescents, and Pregnant Women in Health-Care Settings ("CDC Recommendations"), referenced in the appendix to the Texas Provider Manual.[45]   Carroll contends that the CDC Recommendations do not apply to family planning clinics like Planned Parenthood.[46]   The court need not now resolve this issue, however, because Carroll has adequately alleged that Planned Parenthood knowingly filed false claims through the use of incorrect billing codes or provider

---

[42]Original Complaint, Docket Entry No. 1, p. 6 ¶ 20.E; see also Response, Docket Entry No. 30, p. 10.

[43]Original Complaint, Docket Entry No. 1, p. 7 ¶ 20.E.

[44]Motion to Dismiss, Docket Entry No. 25, p. 8 (quoting Appendix C to the Texas Provider Manual, Exhibit 1 to Motion to Dismiss, Docket Entry No. 25-1, p. 7).

[45]Id.

[46]Response, Docket Entry No. 30, pp. 8-10.

numbers regardless of whether medical necessity was a prerequisite to reimbursement.

>    2.   Carroll has pleaded her § 3729(a)(1)(A) and (B) claims
>         with particularity.

Planned Parenthood argues that Carroll

> has failed to meet Rule 9(b)'s particularity requirement
> for any of the alleged fraudulent schemes identified in
> the Complaint, as she fails to provide any particulars
> regarding dates, places, claims, or patient charts that
> were involved in the alleged fraud, any specific
> fraudulent conduct on the part of any individual, and in
> some cases, fails to even identify how the alleged
> conduct violates any applicable rule or regulation
> concerning reimbursement.[47]

However, Carroll's Original Complaint identifies the individual who performed the services at issue,[48] that individual's qualifications,[49] what services were provided,[50] where those services were provided,[51] where and by whom the billing was performed,[52] the time between each blood draw,[53] who created the supporting schedules,[54] what the schedules contained,[55] why the schedules are

---

[47]Motion to Dismiss, Docket Entry No. 25, p. 14.

[48]Original Complaint, Docket Entry No. 1, pp. 6-7 ¶¶ 20.D-F, p. 8 ¶ 20.H, p. 10 ¶ 23.

[49]Id. at 1 ¶ 2, 6 ¶ 20.D, 8 ¶ 20.H, 9 ¶ 21.D, 10-11 ¶ 23.

[50]Id. at 1 ¶ 2, 6-8 ¶¶ 20.D-H.

[51]Id. at 1 ¶ 2, 4 ¶ 11, 6-8 ¶¶ 20.D-H.

[52]Id. at 7-8 ¶¶ 20.F-H, 10-11 ¶ 23.

[53]Id. at 8 ¶ 20.H.

[54]Id. at 7-8 ¶¶ 20.F-H.

[55]Id. at 7 ¶ 20.E-F.

relevant,[56] the codes used to bill Medicaid,[57] and the physician whose provider number was used to obtain reimbursement.[58]   She explains why the services were ineligible for reimbursement[59] and identifies the amount of money that Planned Parenthood obtained through its allegedly fraudulent course of conduct.[60]   Carroll also describes her interactions with several identified individuals after she brought her claims to the attention of Planned Parenthood management.[61]   The court therefore concludes that Carroll has adequately pleaded "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Benchmark, 343 F.3d at 724.

> 3.   Carroll has not pleaded her § 3729(a)(1)(G) claim with particularity.

As noted above, Carroll's claim under § 3729(a)(1)(G) is based predominantly on her allegations concerning a May 4, 2012, letter that Planned Parenthood submitted to the State of Texas and

---

[56]Id.

[57]Id. at 7 ¶ 20.F, 8 ¶ 20.H, 9 ¶ 21.C, 15 ¶ 33.

[58]Id. at 9 ¶ 21.D, 11 ¶ 23.

[59]Id. at 6-9 ¶¶ 20.E-21.D; see also Response, Docket Entry No. 30, pp. 3-10.

[60]Original Complaint, Docket Entry No. 1, p. 8 ¶ 20.I, p. 10 ¶ 23.

[61]Id. at 9-15 ¶¶ 23-32.

Medicaid MCOs.[62]   Carroll acknowledges that "her pleadings concerning the letter sent out on May 4, 2012, do not clearly describe her claim regarding the failure of Planned Parenthood to report and return overpayments."[63]   She "requests 15 days after the court rules on this matter to replead adding clarification" with regard to the May 4, 2012, letter.[64]   Carroll's request will be granted.   Accordingly, Planned Parenthood's Motion to Dismiss will be granted as to Carroll's claim under § 3729(a)(1)(G), and Carroll will be ordered to file an amended complaint within fifteen days of this Memorandum Opinion and Order stating with particularity the facts concerning the May 4, 2012, letter that form the basis of her claim under § 3729(a)(1)(G).

## C.   Carroll's Claims Are Not Time-Barred

Planned Parenthood argues that Carroll's claims are barred in part by the FCA's six-year statute of limitations.[65]   Carroll argues that the statute of limitations is suspended by the Wartime Suspension of Limitations Act ("WSLA").[66]

In a prior opinion the court addressed the applicability of the WSLA to civil FCA claims.   See United States v. BNP Paribas SA,

---

[62]Id. at 16 ¶ 35.

[63]Response, Docket Entry No. 30, p. 14.

[64]Id. at 14; see also id. at 23.

[65]Motion to Dismiss, Docket Entry No. 25, pp. 19-20.

[66]Response, Docket Entry No. 30, pp. 14-23.

884 F. Supp. 2d 589, 597-609 (S.D. Tex. 2012). For the reasons explained in BNP Paribas, the court concludes that (1) the WSLA applies in civil FCA cases to suspend the statute of limitations when the United States is at war, (2) the United States was at war as of September 18, 2001, and (3) neither Congress nor the President had met the formal requirements for terminating the WSLA's suspension of limitations when the claims at issue in this case were presented for payment. See id.; see also United States ex rel. Carter v. Halliburton Co., 710 F.3d 171, 177-81 (4th Cir. 2013). In Carter the Fourth Circuit held that the WSLA applies to suspend the FCA's statute of limitations even when the United States declines to intervene in the case. 710 F.3d at 180-81 ("[W]hether the suit is brought by the United States or a relator is irrelevant . . . because the suspension of limitations in the WSLA depends upon whether the country is at war and not who brings the case."); see also 18 U.S.C. § 3287 (declaring that the WSLA suspends "any statute of limitations applicable to any offense" involving fraud against the United States). The court finds the reasoning in Carter persuasive and concludes that the WSLA applies to suspend the FCA's statute of limitations in this case.

Planned Parenthood also argues that Carroll's claims under the TMFPA are barred in part because the State of Texas has declined to intervene under Texas Human Resources Code § 36.104.[67]   Before

---

[67]Motion to Dismiss, Docket Entry No. 25, p. 20.

May 4, 2007, § 36.104 provided that "[i]f the state declines to take over the action, the court shall dismiss the action." Act of June 2, 1997, 75th Leg., R.S., ch. 1153, § 4.08, sec. 36.104, 1997 Tex. Gen. Laws 4324, 4346 (amended 2007) (current version at Tex. Hum. Res. Code Ann. § 36.104(b) (West Supp. 2013)). On May 4, 2007, the statute was amended to allow a <u>qui tam</u> relator to proceed without the State's participation if the State declines to intervene. Act of May 4, 2007, 80th Leg., R.S., ch. 29, § 4, sec. 36.104, 2007 Tex. Gen. Laws 27, 28 (amended 2013) (current version at Tex. Hum. Res. Code Ann. § 36.104(b) (West Supp. 2013)). However, the amendment "appli[ed] only to "conduct that occur[ed] on or after the effective date of [the] Act" and "[c]onduct that occur[ed] before the effective date of [the] Act is governed by the law in effect at the time the conduct occurred, and that law is continued in effect for that purpose." <u>Id.</u> § 6.

There is a split of authority on the interpretation of the word "conduct" in the 2007 amendment to § 36.104. One court has interpreted "conduct" to mean the State's election not to intervene. <u>United States ex rel. King v. Solvay S.A.</u>, 823 F. Supp. 2d 472, 521-22 (S.D. Tex. 2011) ("The 2007 amendments apply 'only to conduct that occurs on or after the effective date . . . of [the] Act. . . . The 'conduct' discussed in section 36.104 is the State of Texas's election not to intervene."), <u>order vacated in part on reconsideration</u>, No. H-06-2662, 2012 WL 1067228 (S.D. Tex. March 28, 2012). Two courts have applied the law as it

-23-

existed on the date that the plaintiff-relator filed suit.  <u>See</u> <u>United States ex rel. Lisitza v. Johnson & Johnson</u>, 765 F. Supp. 2d 112, 130-31 (D. Mass. 2011) ("At the time relators filed suit, the State of Texas qui tam statute required dismissal of their claims if the State did not intervene within 60 days of being served with the Complaint. . . .  As Texas has never moved to intervene, the Texas claims will . . . be dismissed."); <u>United States ex rel.</u> <u>Foster v. Bristol-Myers Squibb Co.</u>, 587 F. Supp. 2d 805, 818 (E.D. Tex. 2008) ("According to Texas law in effect when Foster filed suit, 'if the state declines to take over the [qui tam] action, the court shall dismiss the action.'" (quoting Tex. Hum. Res. Code § 36.104(b) (Vernon 1997))).

However, most courts have interpreted "conduct" to refer to the defendant's underlying conduct giving rise to the plaintiff-relator's cause of action.  <u>See, e.g.</u>, <u>United States ex rel.</u> <u>Bergman v. Abbot Labs.</u>, No. 09-4264, 2014 WL 348583, at *17-18 (E.D. Pa. Jan. 30, 2014) (noting a case "allowing claims under the Texas statute to proceed without intervention if filed after the date of the amendment, but only as they pertain to fraudulent conduct occurring after the date of amendment" and dismissing a plaintiff-relator's TMFPA claims as "applie[d] to allegedly fraudulent conduct that occurred before May 4, 2007" (citing <u>United States ex rel. Streck v. Allergan, Inc.</u>, 894 F. Supp. 2d 584, 604 (E.D. Pa. 2012))); <u>Streck</u>, 894 F. Supp. 2d at 604-05 (E.D. Pa. 2012) (holding that the 2007 amendments to the TMFPA allow a

plaintiff-relator to proceed without the State only with regard to fraudulent acts that occurred after the effective date of the amendment); United States v. HCA Health Servs. of Oklahoma, Inc., No. 3:09-CV-0992, 2011 WL 4590791, at *5 (N.D. Tex. Sept. 30, 2011) ("Because the alleged conduct occurred in 2002, the 2002 version of the TMFPA governs this action."); United States ex rel. Wall v. Vista Hospice Care, Inc., 778 F. Supp. 2d 709, 724 (N.D. Tex. 2011) (dismissing TMFPA claims "[b]ecause all of the conduct that [the plaintiff-relator] complains of occurred before [May 4, 2007]"); United States ex rel. Conrad v. GRIFOLS Biologicals Inc., No. RDB 07-3176, 2010 WL 2733321, at *7 (D. Md. July 9, 2010) (noting the plaintiff-relator's concession that "[b]ecause Texas did not intervene in this false claims action, [plaintiff-relator's TMFPA claims] must be dismissed as to any allegations of fraud that occurred prior to May 4, 2007"); Fitzgerald, 2008 WL 9334966, at *7 & nn.9-10 (applying the law in effect when the complained-of conduct occurred to the plaintiff-relator's TMFPA claims).

Because the court has already concluded that Carroll has adequately alleged a cause of action under the FCA for the conduct that is the subject of her TMFPA claims, the court need not resolve this issue of law at this time. As noted above, the parties have focused primarily on the FCA in their briefing and have not argued that a different standard applies to claims under the TMFPA. Thus, even if the court were to adopt Planned Parenthood's interpretation of the 2007 amendments to the TMFPA, all of the conduct of which

Carroll complains and the evidence supporting her allegations would still be relevant to her FCA claims.  The court therefore declines to decide whether the pre- or post-amendment version of § 36.104 applies to Carroll's TMFPA claims arising from Planned Parenthood's allegedly fraudulent conduct before May 4, 2007.

## IV.  **Conclusions and Order**

For the reasons explained above, Defendant's Motion to Dismiss Relator's Original Complaint and Memorandum of Law in Support (Docket Entry No. 25) is **GRANTED IN PART** and **DENIED IN PART**. Carroll shall file an amended complaint within fifteen (15) days stating with particularity the facts concerning the May 4, 2012, letter giving rise to her claim under 31 U.S.C. § 3729(a)(1)(G). The parties have indicated that mediation would be appropriate in this case.[68]  Accordingly, if the parties are not able to settle this case within the next thirty (30) days, they shall provide the court with the name, address, telephone and facsimile numbers, and e-mail address of an agreed upon mediator.  If mediation is not successful, the court will schedule an initial pretrial and scheduling conference.

**SIGNED** at Houston, Texas, on this the 14th day of May, 2014.

SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[68]Joint Discovery/Case Management Plan Under Rule 26(f), Federal Rules of Civil Procedure, Docket Entry No. 27, p. 3 ¶ 15.