IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § <br> ex rel. § <br> § <br> THE STATE OF TEXAS § <br> ex rel. § <br> § <br> PATRICIA M. CARROLL, § <br>         Plaintiff § <br> § <br>   vs. § <br> § <br> PLANNED PARENTHOOD GULF COAST, § <br> INC., f/k/a PLANNED PARENTHOOD OF § <br> HOUSTON AND SOUTHEAST TEXAS, INC. § <br> § <br>         Defendant § | CASE NO. 4:12-cv-03505 <br><br> JURY TRIAL REQUESTED |

### FIRST AMENDED ORIGINAL COMPLAINT

NOTE: The amendments to the Original Complaint are all found in Paragraphs 25.1 and 25.2.

### INTRODUCTION

1. Based on the information available to Patricia M. Carroll ("Carroll"):

2. Since as early as 2002, Planned Parenthood Gulf Coast, Inc., f/k/a Planned Parenthood of Houston and Southeast Texas, Inc. ("Planned Parenthood"), has been billing Medicaid for off-site blood tests of youths confined to Gulf Coast Trade Center ("Trade Center"). Trade Center has either applied on their behalf and/or been determining which youths referred to its facility have established Medicaid eligibility and so informing Planned Parenthood. Planned Parenthood then sent a non-clinician employee to the Trade Center to draw a blood test for sexually transmitted diseases from the youth, and then approximately ten days later return to Trade Center again to take a second test, this time for HIV. Medicaid was then billed twice using billing codes that fraudulently represent that the tests were being done at a Planned Parenthood clinic in Huntsville, Texas by a person with qualifications the person doing the tests

1

did not have and representing services that were not performed. On information and belief, the youths involved were medically screened before being referred to Trade Center, the tests were probably never medically necessary, and it would not be medically necessary to draw blood on two separate occasions, as both tests could be done from blood specimens drawn on one occasion. Thus, these youths were exposed to the risks of blood tests (such as hepatitis). As Planned Parenthood is not certified by Medicaid to perform any services at a school or prison, no matter how Trade Center is categorized, Planned Parenthood was not certified to provide services on its premises. To cover this up, the clinic involved in the scheme would add the youths' names to the clinic's schedule. On at least some occasions, the names were added to time slots that were not even during times when the clinic was opened.

3. Carroll brings this action as Plaintiff-Relator on behalf of the United States of America (herein in "United States" or "USA") and the State of Texas (herein "State of Texas" or "State") against Planned Parenthood.

4. Carroll brings this action on behalf of the United States of America and the state of Texas against the Defendant for maximum damages and civil penalties outlined in the federal False Claims Act, 31 U.S.C. § 3729 *et. seq.*, and the Texas Human Resources Code § 36.002*, et. seq.*

## PARTIES

5. Carroll now resides in Houston, Texas and resided in Spring, Texas while she was an employee of Planned Parenthood from October 2007 until she resigned. Carroll was the Accounts Receivable Manager and discovered the fraudulent, false and ineligible claims billed by Planned Parenthood. On investigation, Carroll gained personal knowledge of the reimbursement received by Planned Parenthood on claims that are fraudulent, false and ineligible, and Planned Parenthood's failure to refund Title XIX funds. Carroll has personal knowledge of the fact that Planned Parenthood has not returned Title XIX funding received on fraudulent, false and ineligible claims submitted between 2002 and 2012. On discovering these

practices, Carroll locked pending claims so they could not be submitted for payment and has resigned her position.

6. Planned Parenthood is contracted to the State of Texas Medicaid Program as a Family Planning Provider (Medicaid Provider Type 71). Planned Parenthood is an IRC 501(C)(3) exempt, non-profit corporation with its principal offices located at 4600 Gulf Freeway, Houston, Texas 77023. Planned Parenthood receives federal Title XIX Medicaid funds for eligible medical services and supplies billed to Medicaid. Planned Parenthood submits claims to the Texas Medicaid & HealthCare Partnership (herein "TMHP") for reimbursement of eligible Medicaid services provided traditional Medicaid patients. Also, Planned Parenthood submits Medicaid to the Managed Care Organizations contracted to administer Title XIX funds on behalf of the State of Texas Medicaid Program. Planned Parenthood's registered agent for service is Melaney Linton, 4600 Gulf Freeway, Houston, Texas 77023.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and 31 U.S.C. § 3732, which explicitly confers jurisdiction on this Court for actions brought pursuant to the False Claims Act, 31 U.S.C. § 3729 and § 3730.

8. This Court has personal jurisdiction over Planned Parenthood, domiciled at 4600 Gulf Freeway, Houston, Texas 77023 pursuant to 31 U.S.C. § 3732(a). Planned Parenthood has resided in and transacted business in the Southern District of Texas.

9. This Court has pendant or supplemental jurisdiction over the claims brought on behalf of the State of Texas, which claims are brought pursuant to the TMFP A, Tex.Hum.Res.Code.Ann. § 36.001 *et seq.* and 28 U.S.C. § 1367(a) and 31 U.S.C. § 3732(b).

10. Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) because Planned Parenthood Gulf Coast can be found in, resides in, and/or transacts business in this district and

because some or all of the violations of 31 U.S.C. § 3729 described herein occurred within this district.

## GULF COAST TRADE CENTER

11.     Trade Center is a private charter school, contracted to the Texas Youth Commission, to provide vocation services to youth involuntarily remanded to Trade Center for care and custody while under court order. The youth receive or maintain Medicaid benefits while under the State of Texas' jurisdiction.  Trade Center has medical staff onsite(at a higher clinical level than provided by the  Planned Parenthood non-clinical staff member) that can provide the same testing and education at no cost that Planned Parenthood bills to Medicaid.  The relationship between Trade Center and Planned Parenthood lasted from 2002 through 2012. At this time, it is unknown if Trade Center receives any financial incentive or kickback for providing Planed Parenthood the Medicaid numbers used to bill fraudulent, false and ineligible claims, to the State of Texas Medicaid Program. All of the claims list Trade Center's physical address as the Medicaid recipient's address.  Trade Center provides Planned Parenthood with the active Medicaid numbers used to bill fraudulent claims.  Only Medicaid enrollees are targeted.

## MEDICAID

12.     The federal Title XIX-Medicaid Program (herein the "Texas Medicaid Program") is a jointly funded federal-state healthcare program which was implemented in the State of Texas in 1967 under the provisions of Title XIX of the federal Social Security Act and Chapter 32 of the Texas Human Resources Code.

13.     As is relevant to this complaint, the Texas Medicaid Program is designed to enable delivery of reimbursable family planning services and supplies to eligible clients who may not have adequate resources to otherwise obtain these services and supplies.

4

14. The Texas Health and Human Services Commission (herein "Texas HHSC") is the single state Medicaid agency responsible for the administration of the Texas Medicaid Program.

15. Family planning services and supplies are delivered pursuant to the Texas Medicaid Program through providers which have entered into provider contracts and agreements with, among others, the Texas Medicaid & Healthcare Partnership (herein "TMHP").

16. TMHP is the claims administrator for the Texas Medicaid Program.

17. A provider, such as Planned Parenthood Gulf Coast, which seeks to become an eligible Texas Medicaid Program provider must, among other things, complete the required Texas Medicaid Program provider enrollment applications and enter into written provider contracts and agreements with Texas HHSC and/or TMHP.

18. Thereafter, a Texas Medicaid Program service provider may submit claims for Texas Medicaid Program services and products delivered to clients to TMHP.

19. In the submission of claims to TMHP, a Texas Medicaid Program service provider certifies, among other things, the following:

   A. Services were personally rendered by the billing provider or under the personal supervision of the billing provider, if allowed for that provider type, or under the substitute physician arrangement.

   B. The information on the claim form is true, accurate, and complete.

   C. Medical records document all services billed and the medical necessity of those services.

FRAUD

20. Carroll's investigation revealed the fraud was perpetrated as follows:

   A. The Texas Youth Commission, or other judicial entity, remands youth to Trade Center, involuntarily, under court order.

B.      Upon entry into Trade Center, Trade Center employee(s) completes Medicaid applications on youth without active Medicaid numbers.  Trade Center employee(s) confirms eligibility of Medicaid benefits for established Medicaid recipients who are remanded to their facility.

C.      Trade Center provides Planned Parenthood, who is an ineligible provider of Medicaid provider of services rendered in a school or prison setting, with the identities and Medicaid numbers of its residents. This is a HIPAA violation because there is no "need to know" reason for the disclosure. The residents are not contacting Planned Parenthood for services. Trade Center is capable of providing testing to its residents without sharing their resident's Medicaid numbers with Planned Parenthood, subjecting the residents to unnecessary blood draws, inflationary billing (two office visits) and creating false claims with information provided by Trade Center to Planned Parenthood.

D.      From 2002 to the present, Planned Parenthood HIV Program staff member, Julio Asendio, a non- clinician, is contacted by Trade Center when new Medicaid numbers are available. Mr. Asendio goes to the clinic under the guise of providing STD education under Planned Parenthood's HIV grant, which provides free testing.

E.      Mr. Asendio takes blood and urine samples from asymptomatic residents and returns the specimen to the Huntsville Health Center.  In addition to the fact that the Trade Center has the capability to perform any needed tests, the services rendered are fraudulent for the following reasons:

- Most of the residents are medically screened by the jails or court systems they come from,  before entering Trade Center.

6

- Planned Parenthood targets an incarcerated population of minority youth exclusively for unnecessary testing and fraudulent claim billing.

- Trade Center has medical/clinical staff available to residents if they develop symptoms. Mr. Asendio is a non-clinician.

- The blood sample is unnecessarily taken twice. The residents must endure duplicate "blood sticks" for the purpose of generating revenue for Planned Parenthood. The syphilis and HIV test can be done with the same blood sample. Planned Parenthood takes blood twice from the residents in order to bill a second, higher level office visit code, and additional unnecessary laboratory tests.

- Planned Parenthood renders services twice in order to bill two office visits that are not performed according standard medical practice or oversight.

- Planned Parenthood adds the names of the Trade Center youths to its clinic schedule, as if they actually visited the clinic. Their home addresses are all shown on the schedule as being the Trade Center. Trade Center patients in the Huntsville HIV Clinic are Trade Center youth with active Medicaid numbers. No services are provided to other schools or people in the Huntsville area. No services are provided to residents in the school unless they have active Medicaid numbers.

F.   Mr. Asendio, returns to Huntsville Health Center where he and the Health Center Director, Brandi Taylor, create fraudulent schedules to give the appearance that the services, an office visit (99211) and STD tests (87491-Chlamydia, 87591-Gonorreah, 86592- syphilis in-house), were rendered onsite at the Huntsville Health Center. Planned Parenthood MSM/HIV staff knew that Trade Center was an ineligible site for their provider type, which is the reason the Place of Service code was falsified to reflect Place of Service code 11-office, when claims were created for billing. Planned Parenthood cannot bill school (POS 03) or prison services (POS 09) to Medicaid for reimbursement. Claims billed by Planned Parenthood with Place of Service codes 03 or 09 would be denied by TMHP and no benefits paid. Planned Parenthood purposely changed the Place of Service to fraudulently secure Title XIX funds on claims that were ineligible.

7

G. Once the fraudulent schedule is created, the false, fraudulent and ineligible claim data can be entered into the medical records and billing systems, and claims are then batched for billing to Medicaid. Claims are approved for billing on the individual health center level. The Accounts Receivable staff batch the approved claims numbers for transmission. The Accounts Receivable staff has no way to tell if the claims contain false billing information. Approval for transmission of claims comes from the health centers. The seasoned Huntsville and HIV program staff knew how to falsify the claims so the claims would bill to Medicaid without detection.

H. About 10 days after the initial "visit", Mr. Asendio returns to Trade Center and takes another blood sample. He then returns to Huntsville Clinic, where he bills an upcoded office visit (99213) and a HIV test (86703), after creating another fraudulent schedule, necessary to create the false claim. Office visit code 99213 must be performed by a physician. Mr. Ascendio is not a physician.

I. Planned Parenthood has perpetrated this fraud for over 10 years and has received approximately $200.00 per youth on thousands of fraudulent false and ineligible claims. Thousands of claims were filed between 2002 and 2012.

FRAUDULENT ACTS

21. The violations committed by the Defendant include:

A. Billing fraudulent, false and ineligible claims that represented the services were performed in the office, when the services were actually rendered at a site ineligible for reimbursement to Planned Parenthood, as a Family Planning provider;

8

B.  Creating false schedules and medical record documentation to give the appearance offsite visits were rendered in the health center/office;

C.  Billing fraudulent, false and ineligible claims that represented a level of care that was not rendered (upcoding), particularly, billing office visit codes 99211 and 99213;

D.  Billing fraudulent, false and ineligible claims that represented services performed by a physician (Dr. Paul Fine), when the services were actually rendered by non-clinical staff, offsite, and without physician supervision;

E.  Billing fraudulent, false and ineligible claims for services not medically necessary and for the sole purpose of generating revenue, in addition to billing for the convenience of the provider;

F.  Failing to refund the State of Texas Medicaid Program and the federal Title XIX Medicaid Program the full amount due on funds received through billing fraudulent, false and ineligible claims; and

G.  Soliciting Medicaid numbers from an ineligible place of service for the sole purpose of billing fraudulent, false and ineligible claims.

22.  This action arises from Planned Parenthood knowingly creating and billing fraudulent, false and ineligible claims to the United States of America, the State of Texas and/or their respective fiscal intermediaries for reimbursement from the State of Texas Medicaid Program, funds which are provided by the federal Title XIX Medicaid Program and/or the State of Texas, for services that Planned Parenthood knew were ineligible for federal Title XIX funds.

### INTENT TO COMMIT FRAUD

23.  The management staff at Planned Parenthood who on information and belief have been involved in perpetrating fraud against the United States government and the State of Texas, by engaging in the historical practice of billing fraudulent, false and ineligible claims, failing to report the fraud, abuse and waste to the State of Texas Medicaid Program and failing

to promptly reimburse the State of Texas Medicaid Program the full reimbursement due on fraudulent, false and ineligible claims are: Laurie McGill, VP, Medical Services, Susan Rokes, HIV Program Director, Brandi Hutchins Taylor, Huntsville Health Center Director, and Dyann Santos, Regional Health Center Director (herein " MSM/HIV employees"). After the fraud, waste and abuse was discovered and investigated by Carroll, Jeffrey Palmer, CFO, was provided detailed knowledge of the findings and failed to stop the historical practice of billing fraudulent, false and ineligible claims, failed to report the fraud, abuse and waste to the State of Texas Medicaid Program and failed to promptly reimburse the State of Texas Medicaid Program the full reimbursement due on fraudulent, false and ineligible claims.  These individuals collectively conspired to conceal false claims filed to the State of Texas Medicaid Program and Managed Care Organizations in order to keep refunds federal Title XIX Medicaid funds and minimize the gravity of the fraud, waste and abuse committed by Planned Parenthood. The fraud began in 2002 and continued until May 2012.  After the fraud was discovered, Carroll's ability to receive reports that verified the full scope of the claims filed fraudulently was curtailed by her superiors. However, Carroll has been able to verify that thousands of claims have been filed in a ten year period. Planned Parenthood received Title XIX reimbursement of approximately $200.00 for each claim that was billed with fraudulent, false and ineligible services for reimbursement under Title XIX of the State of Texas Medicaid Program.   All of the claims contain data elements that represent a false place of service code (POS), and/or upcoded office visits, diagnosis codes contrary to the "medical service" rendered, and lack of medical necessity.  At the exclusion of all other Huntsville area residents, Planned Parenthood Gulf Coast targeted thousands of involuntarily detained, predominantly minority residents at Trade Center for the sole purpose of generating revenue through the abuse and misuse of their Medicaid benefits. Planned Parenthood MSM/HIV employees knew, or should have known, at the time the claims were submitted for payment and transmitted through the billing system, that the claims were fraudulent, false and ineligible for reimbursement under the State of Texas Medicaid Program. Planned Parenthood employee, Julio Asendio, HIV Program staff and non-clinician, was the primary deliverer of services to GCTC youth and entered the fraudulent, false and/or ineligible

claims into the Planned Parenthood scheduling, medical record and billing system, with assistance from Huntsville Health Center/Huntsville HIV Clinic Health Center Director, Brandi Taylor.  In concert with MSM/HIV staff referenced above, Mr. Asendio knowingly billed all of the fraudulent, false and/or ineligible services under Dr. Paul Fine's provider number, Planned Parenthood Gulf Coast's federal Tax ID number, and the TPI and/or NPI of several Planned Parenthood's health centers (Lufkin Health Center, Dickinson Health Center, Greenspoint Health Center and FM1960 Health Center).

<u>SUMMARY OF FACTS COMMON TO ALL CLAIMS FOR RELIEF</u>

24.    Based on the fraud detailed above, Carroll asked Planned Parenthood to refund Medicaid all monies received on behalf of Trade Center Medicaid recipients for the claims submitted from 2002 through the present.  As of the date of Carroll's resignation, Planned Parenthood has refused to refund Medicaid reimbursement on all claims that have been identified as fraudulent, false and ineligible for reimbursement.  Planned Parenthood held meetings with executive level staff who tried to persuade Carroll the claims were billed correctly and minimal reimbursement was due to the state.  Planned Parenthood executive staff sent a Corrective Action Plan to TMHP and the MCOs that purposely omitted information regarding the fact that Planned Parenthood was an ineligible provider of services rendered offsite, in a school setting.  Carroll expressly told Planned Parenthood executive staff that they had committed fraud. Immediately upon discovery, Carroll suspended all claims from billing and ultimately reported the fraud to the State of Texas Attorney General.

25.    Planned Parenthood executive staff refused to allow Carroll to prepare documents to be submitted to the State of Texas Medicaid Program, and its contracted Medicaid Managed Care Organizations, that reflect the true monetary impact of the fraud, the length of time the fraud was committed, identification of ineligible and false claims that were filed, and the number of fraudulent, ineligible and false claims filed with false data that Planned Parenthood knew they were not entitled to receive under Title XIX. Due to Planned

Parenthood's  willful refusal to report the true nature of the falsely and fraudulently filed claims, Planned Parenthood knowingly kept Title XIX funds which Planned Parenthood was not entitled to receive. Planned Parenthood acted in direct violation of its duty to report fraud.

25.1   Defendant was informed in an email dated April 16, 2012, that claims to Medicaid or MCOs using the POS code for schools were ineligible.  Consequently, each claim Planned Parenthood had made for those services was overpaid by the entire amount paid on that claim.  Under 42 U.S.C. 1320a-7k(d), Planned Parenthood was required to reimburse Medicaid and MCOs for each overpayment within sixty days.  Planned Parenthood failed to do this.  Under 42 U.S.C. 1320a-7k(d)(3), the retention of those funds is an obligation under 3729(b)(3) of Title 31 United States Code.  Thus, Planned Parenthood knowingly or improperly avoided an obligation to pay money to the Government, in violation of 31 U.S.C. 3729(a)(1)(G).

25.2   Planned Parenthood's conduct went beyond passively retaining the funds. According to an email seen by Carroll, on May 4, 2012, Planned Parenthood sent letters to Medicaid and MCOs.  While Carroll did not see the final version of those letters, she did see an earlier version.  On information and belief, based on discussions at the time, while the wording of the final version may have differed, the relevant substance of the final letters is the same as the earlier version.  Planned Parenthood represented in the letters that some of the relevant claims were miscoded as 99213 and should have been coded 99211.  This is a misrepresentation, as 99211 was also an improper code.  In addition, Planned Parenthood represented in the letters that the use of POS code 11 in those claims was an error without economic consequence, when Planned Parenthood knew that the claims would not be paid at all without that code.  Furthermore the claims referenced in those letters were not all the claims that had been made.  Copies of the letters are within the control of Planned Parenthood and on further discovery, Carroll may request a further amendment concerning those letters.  By these

letters, Planned Parenthood knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government. This is a separate and additional violation of 31 U.S.C. 3729(a)(1)(G).

<u>RATIFICATION AND PERPETUATION OF FRAUD BY PLANNED PARENTHOOD</u>

26. The fraud came to light on March 4, 2012, when Carroll discovered a large revenue increase in the Huntsville Health Center (314.76%) while preparing the monthly Projection Report. Upon investigating what Carroll believed was a mathematical error; she discovered a fraudulent Medicaid scheme billing perpetrated by Planned Parenthood that lasted over 10 years. Carroll immediately notified the upper management in the Fiscal Department, Medical Services and the HIV Program. She met with the VP, Medical Services Laurie McGill and HIV Program Director to discuss the fraudulent, wasteful and abusive way the claims were obtained and that Carroll believed Planned Parenthood should give back all of the reimbursement received on the claims in question. Carroll advised that she placed all claims related to Huntsville HIV clinic "on hold" until the matter was further investigated.

27. Frustrated with the local affiliate's (Planned Parenthood) unresponsiveness, on March 28, 2012 and March 29, 2012, Carroll contacted Planned Parenthood Federation of America's corporate offices in New York City, NY and Washington, DC, in an attempt to enlist the help of the "corporate officers" to stop the fraud that Planned Parenthood was committing against the government, and the abuse of the Trade Center residents and their Medicaid benefits. Carroll was routed to Planned Parenthood Federation of America's (Washington, DC) ethics attorney, Jay Meisley, with whom she believed she was filing an ethics complaint about fraudulent billing and related activities. However, after making note of the information, and asking questions, Mr. Meisley told Carroll that her information was very much appreciated, thanked her for her honesty and integrity and promised to call her back. Carroll advised that she had placed the fraudulent claims "on hold", but Planned Parenthood was pressuring her to bill the claims. Carroll advised that she would not commit a crime and would never release the claims. Mr. Meisley returned Carroll's call the next day and referred her to a local attorney, King & Spaulding, LLP to file her ethics complaint. He stated the attorney would call her within

13

24 hours. An attorney named "Alissa" returned Carroll's call, identified herself as a "Planned Parenthood attorney" and listened to the details of her complaint and plea for help about the fraudulently filed claims, and the abuse and waste associated with filing of the false claims. Carroll pleaded with "Alissa" to investigate her complaint and make the company give back ten years of Title XIX reimbursement they were not entitled to receive as a family planning provider rendering services in a school setting. "Alissa" (presumably Alissa Rubin) stated that she worked for Planned Parenthood but never called Carroll back. Days later, Carroll overheard her boss, CFO Jeffrey Palmer, talking about a call from "their" attorney about an employee alleging fraud. Carroll immediately went to HR to complain that she was led to believe she was filing an ethics complaint with the company attorney. The Vice President of Human Resources, Pam Whitaker, had been alerted by Carroll of the fraud from the inception of her findings on March 4, 2012. Ms. Whitaker told Carroll that she (Carroll) talked to the attorney representing Planned Parenthood against two lawsuits brought by former employees, Abbey Johnson and Karen Reynolds, and not an ethics attorney. As of the date of Carroll's resignation, nothing was ever done by Planned Parenthood to stop the illegal practices and refund Title XIX funds to the United States government and the State of Texas Medicaid Program. In fact, the CFO, Jeffrey Palmer, told Carroll that Planned Parenthood attorneys told him that the billing the fraudulent, false and ineligible claims was legitimate. Carroll reiterated that the billing was fraudulent and stiff penalties would apply. Shortly thereafter, the CFO told Carroll not to put her fraud assertions in writing, particularly email. Carroll told the CFO again that she believed fraud had been committed, and that she had a duty to report fraud. Carroll asked the CFO, one last time, to consider giving back all of the money received from 2002 to present. The CFO refused and the refunds have not been processed.

28. Planned Parenthood continued to engage in fraudulent billing activities by attempting to submit Trade Center claims for payment. Carroll refused to bill any of the fraudulent, false and ineligible claims billed by Planned Parenthood, causing her enormous stress in the workplace. On June 4, 2012, Carroll advised HR that she would not bill the claims

14

and had a duty to report the fraud. Carroll stated the she would quit her job before she would commit a crime. HR VP Pam Whitaker advised Carroll that she was within her rights to request a letter from the attorneys (presumably King & Spaulding), whom the CFO referred to as "legitimizing their activities" and request indemnification from prosecution because Carroll tried to proceed in accordance with the Medicaid claim filing regulations. Carroll advised that she intended to fight for her right to work in an environment that was free of fraudulent activity. Carroll stated to Ms. Whitaker that she knew that her defiance would put her at odds with Planned Parenthood but she intended to handle this matter in accordance with Medicaid's fraud, waste and abuse regulations.

29.    Immediately thereafter, Jeffrey Palmer, Susan Rokes and Laurie McGill made the decision to write-off the claims Carroll refused to release, but did not, to Carroll's knowledge, fully inform the Medicaid Program or reimburse fraudulent billings.

<u>CARROLL REPORTS FRAUD</u>

30.    On June 4, 2012, the realization that Planned Parenthood never intended to refund monies due to the United States government and the State of Texas Medicaid Program, Carroll reported the fraud, waste and abuse to the Texas State Attorney General's Office.

31.    As required by the FCA, 31 U.S.C. § 3730(b)(2), Carroll provided, in advance of filing her initial complaint, the Attorney General of the United States and, the United States Attorney for the Southern District of Texas with a confidential disclosure of all material evidence and information related to this Complaint. Carroll understands that this confidential disclosure statement and related communications to the U.S Justice Department and related government representatives are privileged communications.

32.    As required by TMFPA, Carroll also provided, in advance of filing her initial complaint, the Attorney General of the State of Texas and related State of Texas government representatives with a confidential disclosure statement of all material evidence and information related to this Complaint. Carroll understands that this confidential disclosure statement and

related communications to the Texas Attorney General and related State of Texas government representatives are privileged communications.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF-VIOLATIONS COMMITTED UNDER THE FEDERAL FALSE CLAIMS ACT

31 U.S.C. 3729-3733 - § 3729. False claims

A. Violation of 31 U.S.C. § 3729(a)(l)(A)

33.     Planned Parenthood knowingly filed fraudulent, false and ineligible claims, generated by improperly securing Medicaid numbers from Trade Center detainees from 2002 to the present and falsifying the location the service was rendered and level of services rendered in order to fraudulently secure Title XIX Medicaid funds.  The claims falsely represent the services were rendered by a physician.  The services, recorded as office visit codes 99211 and 99213, were performed by unqualified, non-clinical staff, without the proper delegation orders or provider eligibility to perform services at a school.  Planned Parenthood is a Family Planning Clinic (Provider Type 71) and an ineligible provider of Medicaid services in a school setting. Planned Parenthood changed place of service codes and upcoded claims in order to receive Title XIX funds. Planned Parenthood Gulf Coast, Inc. bills claims to all Texas Medicaid Managed Care Organizations.  MCOs such as Amerigroup Community Care , Superior Health Plan, Texas Childrens Health Plan and Community Health Choice are due refunds on the false, fraudulent and ineligible claims filed by Planned Parenthood Gulf Coast, Inc. These actions and others pled herein constitute violations of 31 U.S.C. § 3729(a)(l)(A).

B. Violation of 31 U.S.C. § 3729(a)(l)(B)

34.     Planned Parenthood falsified health center schedules, upcoded medical services, misrepresented the place the service was rendered and falsified the medical necessity of the

16

services rendered, in order to fraudulently secure Title XIX Medicaid funds. Planned Parenthood Gulf Coast, Inc. drafted letter to the State if Texas Medicaid Program and the MCOs in order to conceal the scope of their fraud. These actions and others pled herein constitute violations of 31 U.S.C. § 3729(a)(l)(B).

### C. Violation of 31 U.S.C. § 3729(a)(l)(G)

35. On May 4, 2012, Planned Parenthood Gulf Coast submitted certified letters to the State of Texas and Medicaid MCOs, via the US Postal system, which misrepresented the amount of money to be refunded to the State of Texas Medicaid. The omissions and deceptiveness of the letters had the sole purpose of decreasing Planned Parenthood's obligation to refund money to the State of Texas Medicaid Program, the MCOs and the United States government. These actions and others pled herein constitute violations of 31 U.S.C. § 3729(a)(l)(G).

### SECOND CLAIM FOR RELIEF-VIOLATIONS COMMITTED UNDER THE TEXAS HUMAN RESOURCES CODE

36. Paragraphs 1 through 35 of this Complaint are incorporated here.

37. The actions as related herein of Planned Parenthood constitute violations of Texas Human Resources Code § 36.002 subsections (1), (2), (4)(B), (6)(A) and/or (6)(B), (7)(A), (7)(B), (8), and (12) and any other section that may apply.

### RECOVERY AND PENALTIES

38. Carroll seeks the maximum amount to which she is entitled for bringing this action as allowed by 31 U.S.C. § 3730(d) and Texas Human Resources Code § 36.110.

39. Planned Parenthood is liable for and should be required to pay all damages, reimbursements, civil penalties, interest two times the amount of any payment, costs, expenses, and attorney's fees allowed by 31 U.S.C. § 3729 and/or Texas Human Resources

Code § 36.052.  On information and belief based on other civil actions filed against Planned Parenthood, Planned Parenthood has violated these statutes before and in other ways.  Planned Parenthood's actions involve subterfuges that indicate blatant falsification over a long period of time making the unlawful acts serious in their nature, circumstances, extent, and gravity.  The health and safety of youths at the Trade Center were unnecessarily endangered by the potential side effects of drawing unnecessary blood samples at an unauthorized location.  The amount of penalties must be the maximum allowed to deter future unlawful acts.

REQUEST FOR JURY TRIAL

40. Pursuant to F.R.C.P. 38, Carroll hereby demands a trial by jury on all matters triable to a jury.

Respectfully submitted,

/s/ Kurt Arbuckle
Kurt Arbuckle
Federal ID 6613
Texas Bar No. 01284500
Kurt Arbuckle, P.C.
2121 Sage Road, Suite 100
Houston, Texas  77056
713 961-5353
713 961-5236 Fax
Email: kurt@kurtarbuckle.com
Attorney-In-Charge for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served on counsel for all parties via the Court's CM/ECF system on this 19th day of May 2014.

/S/ Kurt Arbuckle